# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| TY INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:26-cv-00463 |
| v. | ) | |
| | ) | Judge Sharon Johnson Coleman |
| POP MART AMERICAS INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff TY Inc. ("Ty") brings the present action against Defendant Pop Mart Americas Inc. ("Pop Mart") for (I) trademark infringement arising under 15 U.S.C. § 1114, (II) false designation of origin and unfair competition under 15 U.S.C. § 1125(a), (III) trademark dilution arising under 15 U.S.C. § 1125(c), (IV) violation of Illinois Consumer Fraud and Deceptive Business Practices Act under ILCS 505/2 ("ICFA"), and (V) common law trademark infringement under Illinois law. Before the Court is Ty's Motion for a Preliminary Injunction ("PI") pursuant to Rule 65(a) of the Federal Rules of Civil Procedure and Motion for a Pre-Judgment Asset Restraint ("Motion"). For the reasons set forth herein, the Court grants in part and denies in part Ty's Motion [16].

## BACKGROUND

Unless otherwise noted, the following factual allegations are taken from Plaintiff's Complaint (hereinafter, "Complaint"), (Dkt. 1), and are assumed true for purposes of resolving these Motions. *See W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016).

### A. Ty's Registered Trademarks

Ty is the owner and manufacturer of a line of plush toys sold under its registered trademarks BEANIES®, BEANIE BABIES®, BEANIE BOOS®, BEANIE BELLIES®, and BEANIE

1

BOUNCERS® ("Beanies Products"). These related trademarks were registered with the United States Patent and Trademark Office ("U.S.P.T.O.") from as early as 1997 to as late as 2025, as further outlined in the following:

1. Trademark Registration No. 2,049,196 for the BEANIE BABIES mark, associated with plush toys, was registered with the U.S.P.T.O. on April 1, 1997.

2. Trademark Registration No. 3,451,670 for the BEANIES mark, associated with plush toys and wholesale online store services featuring plush toys, was registered with the U.S.P.T.O. on June 24, 2008.

3. Trademark Registration No. 5,396,599 for the BEANIE BOOS mark, associated with plush toys, soft sculpture plush toys, stuffed and plush toys, stuffed toy animals, and stuffed toy bears, was registered with the U.S.P.T.O. on February 6, 2018.

4. Trademark Registration No. 7,069,910 for the BEANIE BELLIES mark, associated with plush toys, was registered with the U.S.P.T.O. on May 30, 2023.

5. Trademark Registration No. 7,932,746 for the BEANIE BOUNCERS mark, associated with bean bags, plush toys, soft sculpture toys, and stuffed toy animals, was registered with the U.S.P.T.O. on September 2, 2025.

Since Ty began using the Beanies Marks, approximately 30 years ago, its use of the Marks in connection with plush toys has been continuous and exclusive.

**B. Pop Mart's "Beanie Series"**

In 2018, Pop Mart entered into an exclusive licensing agreement with a Hong Kong illustrator "Pucky." (Dkt. 26 at *4.) Pop Mart distributes all of the Accused Products under its "Pucky" Series (the "Pucky Series"), a fictional fantasy universe and a series of characters that draw inspiration from "Puck," the sprite in Shakespeare's A Midsummer Night's Dream. *Id.* The Pucky Series includes

three "tribes" of sprite characters: the Pucky tribe, the Poko tribe and the Beanie tribe. The "Beanie Sprites" character description explains:

> Beanies are a group of sprites born from the dreamy snot bubbles of a dozing PUCKY fairy. Their bodies are extremely soft, featuring round or pointy heads. Beanies prefer to hide in inconspicuous corners, leisurely relaxing or taking naps. These slow sprites wish for nothing more than to chill and do nothing.

(*Id.* at *3-4.) Beanie Sprites do not have necks, giving them a round, bean-shaped body. In fact, they are born on bean trees and are called "豆子" (meaning "Bean" in English) or "小豆子" (meaning "Little Beans" in English) in Chinese. *Id.* at 22.

Since 2018, Pop Mart has released thirty-seven themed Pucky Series, comprising more than 210 individual character designs. Each Pucky Series typically includes between six and twelve standard character designs and one rare "secret" character distributed through Pop Mart's "blind-box" format. (*Id.* at *5.) The Pucky Series are designed as collectible art toys for children fifteen and older. Specifically, two series, the "PUCKY BEANIE BUBBLE UP SERIES" and the "PUCKY EGG BEANIE SERIES" (collectively, the "U.S. Beanie Sprite Series") and a standalone character, "PUCKY POKO THE BEANIE FARMER" (the "U.S. Stand-Alone Beanie Sprite"), have used the term in connection with U.S. offerings. In addition, one character within the "PUCKY POKO ADVENTURE SERIES" features a Beanie Sprite known as "Beanie's Decision Sprite."

### B. Ty's Allegations

After becoming aware of Pop Mart's Pucky Series, Ty began to allege that products Pop Mart offered for sale, distributed, marketed, sold, and/ or are continuing to sell Pucky products under Beanies Marks. For example, Ty alleges Pop Mart used Beanies Marks in connection with the sale of the following, non-exhaustive list of products:

**Pucky Beanie Bubble Up Series**
**(In the product name and on the packaging box)**

3



**Pucky Egg Beanie Series Figurine, Plush, and Accessories**
**(In the product name, on the packaging, products, and on the identity cards)**

 

**Pucky Animal Beanies Series**
**(In the product name and on the packaging boxes)**

4



Ty, on information and belief, alleges that Pop Mart's unauthorized use of the Beanies Marks in the Pucky Series is intended to trade upon the goodwill and substantial recognition associated with Ty and the Beanies Marks, to cause mistake or deception as to the source of Pop Mart's Accused Products, to trade upon Ty's valuable reputation and customer goodwill in its Beanies Marks, and cause confusion, mistake, or deception. Specifically, Ty notes that all the Accused Products were marketed as products for use by children, similar to Ty's Beanies Products, that the Beanies Marks are more prominent that the Pop Mart mark on the packaging of certain Accused Products, and that at least some of the products are "plush" - made with soft fabric such as cotton or polyester – similar to Ty's products and unlike Pop Mart's signature "figurines made of PVC."

### C. Ty's Cease and Desist Letter to Pop Mart

On October 30, 2025, Ty sent a letter to Pop Mart notifying it of the Accused Products, confirming Ty's ownership and prior use of the Marks in question, and demanding that Pop Mart cease any and all use of Ty's Marks. On November 4, 2025, Pop Mart's legal counsel confirmed receipt of Ty's cease and desist letter and on November 10, 2025, expressed an interest in selling off

its remaining inventory of Accused Products. Soon thereafter, on November 7, 2025, without admitting any wrongdoing, Pop Mart took steps to remove all Accused Products from sale and placed a hold on sales in the United States while the parties engaged in settlement discussions. Despite its intention to release two additional Pucky Series of Beanie Sprites, out of an abundance of caution, Pop Mart also withheld their release in the United States.

On January 15, 2026, in the midst of settlement discussions, Ty filed the instant action after identifying continued sales of the Accused Products. The Parties' respective counsel met on January 23, 2026, and February 13, 2026, to discuss the case. On February 3, 2026, Pop Mart's counsel represented that "all sales have ceased for all the referenced products worldwide." However, on February 12, 2026, counsel for Ty still identified several instances of Pop Mart continuing to sell the Accused Products on its website and on Amazon. Ty now requests that the Court enter a PI against Pop Mart and those acting in concert therewith so that Defendant is enjoined from manufacturing, importing, distributing, offering for sale, and selling Accused Products during the pendency of this litigation. As part of the PI, Ty requests that the financial accounts associated with Pop Mart's Shopify-powered website, Amazon, AliExpress, TikTok Shop, Shopee, WeChat, Tmall, Taobao, WhatNot and any other financial or e-commerce accounts used to sell the Accused Products remain frozen as they relate to the Accused Products until completion of these proceedings.

**LEGAL STANDARD**

A party seeking a PI must first demonstrate: (1) likelihood of success on the merits; (2) that irreparable harm is likely in the absence of the PI; and (3) that there is no adequate remedy at law. *See Turnell v. Centimark Corp.*, 796 F.3d 656, 661 (7th Cir. 2015). If the moving party fails to demonstrate any one of these three threshold requirements, the Court must deny the motion. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008).

6

If the Court is satisfied that these three conditions have been met, then it must consider the harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Valencia v. City of Springfield, Illinois*, 883 F.3d 959, 966 (7th Cir. 2018). Finally, the Court must consider the potential effect on the public interest (non-parties) in denying or granting the injunction. *See id.*

## DISCUSSION

Ty argues its Motion should be granted because it meets all three threshold requirements for preliminary injunctive relief and because the relief requested is in the public interest. *See* (Dkt. 16 at *9.) The Court addresses these arguments in turn.

### I. Likelihood of Success on the Merits

#### 1. *Federal Trademark Infringement*

A defendant is liable for trademark infringement under the Lanham Act if, "without the consent of the registrant, it uses in commerce any reproduction, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods ... which such use[s] is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). In order to prevail on a trademark infringement claim, a plaintiff must establish that (1) its mark is protectable; (2) the defendant's use of the mark is likely to cause confusion among consumers; and (3) the defendant's use of the mark is not authorized. *Segal v. Geisha NYC LLC*, 517 F.3d 501, 506 (7th Cir.2008). For the likelihood of confusion analysis, the Seventh Circuit has enumerated seven factors to determine whether there is a likelihood of confusion: (1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of complainant's mark; (6) actual confusion; and, (7) intent of the defendants to palm off their products as that of another. *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir.2008).

7

Ty argues it satisfies all elements necessary to maintain its trademark infringement claim under the Lanham Act. (Dkt. 16 at *10.) Regarding the first and third elements, whether the mark is protected and whether the use is authorized, Ty argues its Beanies Marks are valid, inherently distinctive, that Ty has continuously and exclusively used the Marks, and maintains that it did not authorize Pop Mart's use of its Marks. (*Id.* at *11.) For the second element, likelihood of confusion, Ty argues all factors weigh in its favor. As to the first four factors of this analysis, Ty argues the Marks are similarly priced and styled, are both marketed as toys in online and retail stores, and that the diverse consumer base creates potential for confusion. *See* (*id.* at 16-17.) (citing *Trans Union LLC v. Credit Research, Inc.*, 142 F. Supp. 2d 1029, 1043 (N.D. Ill. 2001) (Moran, J.) ("[W]hen a buyer class is mixed, the standard of care to be exercised by the reasonably prudent purchaser will be equal to that of the least sophisticated consumer in the class.")). As to the fifth factor, the strength of the Marks, Ty argues that due to its long-standing use and wide acceptance by the public, Ty's Beanies Marks have become famous and associated with high quality Beanies Products, making that factor weigh in Ty's favor. (*Id.* at *18.) As to the sixth factor, Ty asserts that it does not need to prove actual confusion, but merely needs to prove potential of confusion, which is sufficiently shown based on the similar uses and consumer base the Accused Products are marketed to. (*Id.* at *19) (citing *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 686 (7th Cir. 2001) ("the plaintiff need not show actual confusion in order to establish *likelihood* of confusion.")). As to the final likelihood of confusion factor, intent, Ty argues this factor also weighs in its favor since there is *at least* an inference that Pop Mart intentionally uses Ty's Marks to confuse the public into thinking that its Accused Products are manufactured by or emanate from Ty. (Dkt. 16 at *19-20.)

In response, Pop Mart argues Ty's claim fails because the alleged Accused Products are not using Ty's Marks, but instead, are prominently marketed under the Pop Mart and Pucky Marks that appear conspicuously on its packaging. (Dkt. 26 at *10) (citing *Grubhub Inc. v. Kroger Co.*, No. 1:21-cv-

8

05312, 2022 U.S. Dist. LEXIS 130009, at *20 (N.D. Ill. May 25, 2022) ("Grubhub I") (stating prominent display of different brand names on products otherwise containing similar marks reduces the likelihood of infringement)). As to the likelihood of confusion analysis, Pop Mart argues the products are not similar because they differ in nature, design, and consumer perception. (Dkt. 26 at *12) Specifically, Pop Mart argues the products are materially difference because the Accused Products are primarily small, collectible figurines made of PVC material, contrasting Ty's pellet-filled plush toys. (*Id.*) As to the third factor, Pop Mart argues that the manner in which the parties' market and sell their products confirms the absence of any meaningful marketplace overlap since the Pucky Series is marketed to children over 15 as collectible figures, contrasting Ty's marketing to young children. (*Id.* at *13) Pop Mart further asserts that its customers exercise great care since the Pucky products are released in curated, themed series, often in limited quantities and sometimes with rare or "secret" figures, and are sought out specifically because they belong to particular character lines—purchasing behaviors that reflect care and deliberation. (*Id.* at *14-15.) (citing *CAE, Inc.*, 267 F.3d at 683 ("where consumers are sophisticated, deliberative buyers, confusion is less likely.") Next, Pop Mart argues Ty overexaggerates the strength of its Marks, making their argument that standalone word "beanie" functions as a distinctive source identifier, unconvincing. (Dkt. 26 at 16.) Pop Mart then emphasizes that Ty's PI Motion lacks any evidence that consumers have actually been confused despite the parties' products coexisting in the market since 2018. (Dkt. 26 at 18.) As to the final factor, Pop Mart argues Ty cannot prove bad faith since it markets the Accused Products under its well-known brand and because the Pucky Series arises from Pop Mart's own creative framework. (*Id.* at *20.)

Pop Mart additionally argues that Ty's claim fails due to Pop Mart's "fair use" defense. The fair use doctrine is based on the principle that no one should be able to appropriate descriptive language through trademark registration. *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 639 (7th Cir.

2001). A defendant in a trademark infringement case may invoke the "fair use" defense by demonstrating that (1) it used the phrase at issue in a non-trademark capacity, (2) the phrase is descriptive of its goods and services, and (3) it used the phrase "fairly and in good faith" only to describe its goods. *Ill. Tamale Co., Inc. v. LC Trademarks, Inc.*, 164 F.4th 648 (7th Cir. 2026) (citing § 1115(b)(4)). Pop Mart maintains it does not use "beanie" as a trademark; by contrast, the word "beanie" appears only as part of longer product names and functions as part of a descriptive, contextual phrase, not as a standalone brand. (Dkt. 26 at *21.) Here, Pop Mart argues, "beanie" directly describes features of the class of characters in the Pucky universe: small, rounded, bean-shaped bodies resembling "beans." (*Id.*) Pop Mart finally argues the record contains no evidence of bad faith. The word "beanie" is merely used in a limited, context-specific manner tied to the design or characterization of the Beanie Sprites within certain Pucky Series, which Pop Mart characterizes as a fair use. (*Id.* at *22.)

Reviewing all the relevant factors, the Court concludes that Ty is likely to succeed on the merits of its trademark infringement claim. It is undisputed that Ty's Beanies Marks are protected, that the words "Beanie" and the phrase "Beanie [] Babies" appears prominently and consistently on the Infringing Products, and that Ty has not authorized Pop Mart's use of its Marks. The Court's analysis thus depends on the likelihood of confusion between Ty's products and the Accused Products. Most importantly here, the close relatedness of the products at issue, is dispositive for the Court. "A closely related product is one which would reasonably be thought by the buying public to come from the same source, or thought to be affiliated with, connected with, or sponsored by, the trademark owner." *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 900 (7th Cir. 2001). While Pop Mart seeks to differentiate itself in the market by focusing on its products comprising "PVC' materials," many of the products at issue, as evidenced by the Pucky Egg Series, are made of plush materials similar to Ty. The buying public that encounters this product may be confused about whether such a

10

product was produced by or affiliated with Ty's plush products. As to the differences in recommended ages between the consumers, young children for Ty and children 15 and older for Pop Mart, the Court is unconvinced that the consumer base is so different that no confusion can occur. Both companies market to children, and despite Pop Mart's characterization, Ty has a thirty-year history of marketing to a diverse consumer base, including collectors of all ages.[1] These market channels are arguably identical, and at minimum, overlapping, which is sufficient to establish likelihood of confusion. *See AutoZone, 543 F.3d at 932* (holding overlapping marketing channels increases the likelihood of confusion among consumers encountering the parties' products.)

Similarly, Pop Mart's argument that Ty has not shown proof of actual confusion, also fails. Seventh Circuit authority repeatedly emphasizes that Ty does not have to provide proof of actual confusion but merely evidence of potential confusion. *See CAE, Inc.,* 267 F.3d at ("[a]s we have stated many times ... the plaintiff need not show actual confusion in order to establish *likelihood* of confusion."). Here, where at least one of the Accused Products, sold to an overlapping market of children and collectors, contains the full name of Ty's long-standing trademark (Beanie "flying" Babies), the Court believes Ty has established at least potential confusion. Finally, as to Pop Mart's fair use defense, Pop Mart cannot meet the first element of proving that it used the word "beanie" in a non-trademark capacity. Pop Mart's own filing concedes it uses "beanie" in a series of characters throughout a fantasy universe, suggesting that the name extends beyond mere "description," but instead aims to establish proprietary distinction within the Pucky universe. Considering all the factors together, the Court believes Ty has established likelihood of success on the merits of its Trademark Infringement claim.

### 2. *Federal False Designation of Origin and Unfair Competition Claims*

---

[1] *See, e.g.*, Gilkeson, James H., Lamb, Reinhold P. "From Beanie Babies to Baseball Cards: A Financial Application of Collectibles Markets," Journal of Financial Education, Vol. 26, (2000).

When a plaintiff establishes a likelihood of success on the merits of a trademark infringement claim it also establishes a likelihood of success on the merits of false designation of origin and unfair competition claims. *See Xped LLC v. Entities Listed on Exhibit 1*, 690 F. Supp. 3d 831, 841 (N.D. Ill. 2023) (Jenkins, J.); *also see CME Group Inc. v. Nagovskiy*, 1:19-CV-01621, 2019 WL 13252888, at *2 (N.D. Ill. Apr. 8, 2019)(Coleman, J.) (plaintiff established "a likelihood of success on its unfair competition claims since it has shown that it has protectable trademarks, and there is a likelihood of confusion as to the origin of the [d]efendants' services."). Accordingly, since Ty established a likelihood of success on the merits of its trademark infringement claim, it also established a likelihood of success on the merits of its false designation of origin and unfair competition claims.

### 3. *Federal Trademark Dilution*

In order to succeed on a trademark dilution claim, a plaintiff must establish that its mark is famous, defendant adopted its mark after plaintiff's mark became famous, use of defendant's mark causes dilution of plaintiff's mark, and defendant's use of its mark is commercial and in commerce. Lanham Trade–Mark Act, § 43(c)(1), 15 U.S.C.A. § 1125(c)(1); *Eli Lilly & Co. v. Nat. Answers, Inc.*, 233 F.3d 456 (7th Cir. 2000). Ty argues it is likely to succeed on the merits of its trademark dilution claim. First, Ty argues its mark's wide renown, coupled with the national and international distribution and extensive sale of various products distributed under the Beanies Marks over thirty years, establishes the Marks' fame. (Dkt. 16 at *21.) Second, Ty argues Pop Mart uses Ty's Marks in commerce, without authorization, through its Accused Products. (*Id.*) Finally, Ty argues Pop Mart dilutes Ty's Marks because its sale of Accused Products causes consumers to see Ty's famous Beanies Marks on different goods such that the Beanies Marks lose their ability to serve as a unique identifier of Ty's Beanies Products. (*Id.*)

In response, Pop Mart concedes that the Beanie Marks have been famous for decades, but argues Ty's fame has since diminished. (Dkt. 26 at *24.) Pop Mart also emphasizes that the Seventh

12

Circuit previously rejected Ty's argument that fame alone is sufficient to establish dilution, rather Ty must show that Pop Mart's challenged use is likely to blur the Beanie Marks' distinctiveness or tarnish their reputation. (*Id.*) (citing *Ty Inc. v. Perryman*, 306 F.3d 509, 511-12 (7th Cir. 2002). According to Pop Mart, Ty has not shown either. Pop Mart argues Ty has not shown blurring, or that Ty's unique source identifier has been weakened when consumers encounter them across a "plethora of different goods and services," (*see Eli Lilly*, F.3d at 466), because it does not allege Pop Mart has impaired the ability of Ty's trademarks to identify a single source. (Dkt. 26 at *25). Pop Mart also argues Ty has not shown tarnishing, or shown that Pop Mart causes consumers to associate the famous mark with an inferior, offensive, or unsavory subject matter that harms its reputation, (*see Eli Lilly*, 233 F.3d at 466), because Ty does not allege that Pop Mart's Accused Products are offensive or unsavory. (Dkt. 26 at *25).

The Court concludes Ty is likely to succeed on the merits of its trademark dilution claim because Pop Mart's use of its Marks, across a "plethora of different goods and services," likely diminishes Ty's ability to use the "beanies" Marks as a unique identifier for its products. While the Court acknowledges that Pop Mart is not creating inferior or unsavory Accused Products at this time, Pop Mart's continued unauthorized use of Ty's Marks could create this problem in the future. Whether Ty's fame has diminished since its peak, does not foreclose the idea that Pop Mart's unauthorized use dilutes Ty's ability to use its Marks as unique identifiers for its present and future products. Based on the pleading before the Court, Ty sufficiently established a likelihood of success on its trademark dilution by blurring claim.

### 4. *ICFA and Common Law Trademark Dilution Claims*

Finally, the Court analyzes whether Ty has established a likelihood of success on the merits of its ICFA claim. "Claims for unfair competition and deceptive business practices brought under Illinois statutes are to be resolved according to the principles set forth under the Lanham Act." *Desmond v.*

*Chicago Boxed Beef Distributors, Inc.*, 921 F. Supp. 2d 872, 884 (N.D. Ill. 2013) (Castillo, J.) (internal citations omitted). The same is true for Ty's common law trademark infringement claim. *See IPOX Schuster, LLC v. Nikko Asset Mgmt. Co., Ltd.*, 304 F. Supp. 3d 746, 759 (N.D. Ill. 2018)(Kennelly, J.)("the court applies the same analysis for the Lanham Act and common law claims."). Thus, because Ty established likelihood of success on the merits for its federal trademark infringement claim, it also established likelihood of success on the merits of its ICFA and common law trademark infringement claims.

## II. Showing of Irreparable Harm

Having determined Ty established a likelihood of success on the merits of its claims, next the Court will evaluate Ty's assertion that it faces irreparable harm absent injunctive relief. A showing of irreparable harm requires more than a mere possibility of harm. *See Michigan v. U.S. Army Corps of Eng'rs*, 667 F.3d 765, 788 (7th Cir. 2011). Harm is considered irreparable if it "cannot be prevented or fully rectified by the final judgment after trial." *Girl Scouts*, 549 F.3d at 1089.

Ty argues it will suffer substantial loss of goodwill and reputation unless and until Pop Mart is preliminarily and permanently enjoined from selling Infringing Products. (Dkt 16 at *24.) Specifically, Ty argues monetary damages alone cannot adequately compensate Ty for ongoing infringement because they fail to fully address Ty's loss of control over it Marks and any risk to Ty's reputation and goodwill. (*Id.*) Pop Mart, by contrast, argues that Ty has not established irreparable harm because it has not shown any marketplace loss. *See* (Dkt. 26 at *26.) Pop Mart concludes the realities of the marketplace further undermine Ty's theory because the Accused Products have been sold for several years, yet Ty identifies no evidence of harm to its reputation, no lost customers, and no marketplace confusion during several years of coexistence. (*Id.*)

As an initial matter, in the context of trademark law, once the movant establishes a likelihood of success on the merits, it is statutorily entitled to a rebuttable presumption of irreparable harm. 15

14

U.S.C. § 1116(a); *Grubhub Inc. v. Relish Labs LLC*, 80 F.4th 835, 844 (7th Cir. 2023). Because Ty established a likelihood of success on the merits, it is thus entitled to a rebuttable presumption of irreparable harm. While Pop Mart seeks to rebut this presumption by arguing that Ty must show marketplace loss, such a showing is not required by the law. It is well-settled that, because the principal value of a patent is its statutory right to exclude, the nature of the patent grant weighs against holding that monetary damages will always suffice to make the patentee whole. *Techtronic Indus. Co., Ltd. v. Chervon Holdings Ltd.*, 395 F. Supp. 2d 720, 736 (N.D. Ill. 2005) (Castillo, J.). "[T]he patent statute provides injunctive relief to preserve the legal interests of the parties against future infringement which may have market effects never fully compensable in money." *Id.* Thus, because Ty established a likelihood of success on the merits and because Pop Mart's market loss argument fails, Pop Mart has not rebutted Ty's presumption of irreparable harm.

### III. Adequate Remedy at Law

The final consideration in the threshold analysis is to determine whether adequate remedies at law exist in absence of the requested relief. *Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 813 (7th Cir. 2002). This requires a showing that any award would be "seriously deficient as compared to the harm suffered." *Foodcomm Int'l v. Barry*, 328 F.3d 300, 304 (7th Cir. 2003). The Seventh Circuit has "clearly and repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy." *Re/Max N. Cent. Inc. v. Cook*, 272 F.3d 424, 432 (7th Cir. 2001). For the reasons stated in the irreparable harm analysis, the Court determines that injunctive relief is warranted here where no adequate remedy at law exists.

### IV. Balance of Harms and Public Interest

Finally, the Court considers the balance of equities between the parties and the effect of the requested relief on the public interest. Before ruling on an injunction request, courts are required to "balance the competing claims of injury" and "consider the effect on each party of the granting or

withholding of the requested relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008). This includes "particular regard for the public consequences" should the preliminary injunction be issued. *Id.* This analysis is a "subjective and intuitive one which permits district courts to weigh the competing considerations and mold appropriate relief." *Ty, Inc. v. Jones Group*, Inc., 237 F. 3d 891, 896 (7th Cir. 2001). Generally, enforcement of trademark law is in the public interest because it prevents consumer confusion. *See Eli Lilly*, 233 F.3d at 469.

Ty argues that the balance of equities tips in favor since Pop Mart is actively profiting from its Accused Products and because Ty faces continued loss of future sales and market share. *See* (Dkt 16 at *27.) Ty additionally argues that the requested injunctive relief is in the public interest because it will prevent consumer confusion and stop Pop Mart from violating federal trademark law. (*Id.* at *28.) Pop Mart, by contrast, argues that the requested injunction would impose immediate and concrete burdens on Pop Mart by "restricting its ability to use accurate, descriptive terminology within its own creative and commercial framework," disrupt product lines, and require costly changes to product development. (Dkt. 26 at *27-28.)

The balance of harm and public interest weigh in favor of issuing an injunction. While Pop Mart will face disruption to its product lines, the Court will not prioritize Pop Mart's sale of the Accused Products over protecting the Marks, goodwill, and market share of Ty. The public interest is also better served by enforcing federal and state trademark laws because they protect consumers from confusion and fraud. Accordingly, because Ty established (1) likelihood of success on the merits; (2) that irreparable harm is likely in the absence of the PI; (3) that there is no adequate remedy at law, and (4) that the balance of harms and public interest weigh in its favor, injunctive relief is appropriate.

### V.    Pre-Judgement Asset Restraint

Ty next requests a restraint of Pop Mart's assets to preserve Ty's right to an equitable accounting of Pop Mart's profits from sales of the Accused Products. (Dkt. 16 at *29.) The Copyright

16

Act expressly authorizes the Court to freeze assets to protect a plaintiff's equitable remedies of disgorgement of profits obtained from the infringing conduct. 17 U.S.C. § 504(b). Generally, however, prejudgment asset restraints are not proper simply to establish a fund from which a later award of money damages can be satisfied. *See Grupo Mexicano de Desarollo, S.A. v. All. Bond Fund*, 527 U.S. 308, 325-26 (1999).

Ty asserts such a restraint is necessary to ensure Pop Mart's compliance and to ensure that Pop Mart does not "disregard [its]responsibilities and fraudulently transfer financial assets to overseas accounts before a restraint is ordered." (Dkt. 16 at *29.) Pop Mart objects to such a restraint, emphasizing that it is a legitimate, well-established global company with a substantial and ongoing business presence in the United States. (Dkt. 26 at *30.) Pop Mart additionally emphasizes that Ty's speculation that Pop Mart will fraudulently transfer financial assets defies the record, especially here, where Pop Mart voluntarily ceased sales of the Accused Products after receiving a demand letter from Ty. (*Id.* at *31.)

The Court agrees with Pop Mart that such a restraint in inappropriate in this instance where Pop Mart is a well-established company in the United States and where plaintiff provides no evidence that Pop Mart has ever attempted to evade legal obligations, conceal assets, or otherwise frustrate judicial process. Ty's speculative conclusion that Pop Mart will evade its responsibilities, is contradicted by the record.

### III. Required Security Bond

Finally, Ty asks this Court to set a security bond of no more than $10,000.00 "because of the strong and unequivocal nature of Ty's evidence of infringement, and unfair competition. Pursuant to Federal Rule of Civil Procedure 65(c), the Court may "issue a preliminary injunction ... only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party [later] found to have been wrongfully enjoined or restrained." *See also Ty, Inc.*

17

*v. Publications Intern. Ltd.*, 292 F.3d 512, 516 (7th Cir. 2002) ("[t]he purpose of an injunction bond is to compensate the defendant, in the event he prevails on the merits."). "The appropriate amount of the bond is subject to the court's discretion." *Monster Energy Co. v. Wensheng*, 136 F. Supp. 3d 897, 910 (N.D. Ill. 2015) (Lefkow, J.). Since Pop Mart failed to respond to Ty's request for a $10,000 bond, its objection to that amount is waived. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010). ("[f]ailure to respond to an argument ... results in waiver."). In light of Ty's strong evidence of infringement, the Court deems a $10,000 bond appropriate.

**CONCLUSION**

For these reasons, the following PI order is entered until further notice from this Court. The Court grants Ty's request for a PI and ORDERS that Pop Mart, its officers, agents, servants, employees, representatives, successors, and assigns, and all persons, firms, or corporations in active concert or participation with Pop Mart, be enjoined from the following:

1) using to market, advertise, promote, sell, offer for sale, and/or identify Pop Mart's goods with the Beanies Marks in a way that is likely to create the erroneous impression that Pop Mart's goods originate from Ty, are endorsed by Ty, or are connected in any way with Ty;

2) manufacturing, distributing, shipping, importing, reproducing, displaying, advertising, marketing, promoting, transferring, selling, and/or offering to sell any products bearing any of the Beanies Marks and/or any confusingly similar marks;

Pop Mart is further ORDERED to file with this Court and serve on Ty within thirty (30) days after the service of the injunction, a report, in writing, under oath, setting forth in detail the manner and form in which Pop Mart has complied with the injunction pursuant to 15 U.S.C. § 1116.

Ty is ORDERED to deposit a bond in the amount of $10,000.00 with the Clerk of the court.

IT IS SO ORDERED.

Date: 6/8/2026

Entered: _____

SHARON JOHNSON COLEMAN
United States District Judge